***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Gregory. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gregory with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the alleged injury subject to this claim is May 1, 2003.
2. On May 1, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On May 1, 2003, an employer-employee relationship existed between plaintiff and defendant-employer.
4. On May 1, 2003, defendant-employer employed more than three employees in North Carolina.
5. On May 1, 2003, the carrier of workers' compensation insurance in North Carolina for defendant-employer was Defendant-Carrier AIG Claims Services.
6. Plaintiff's average weekly wage is $396.20, yielding a weekly compensation rate of $264.13.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 25-year old immigrant from Bosnia who has lived in the United States since September 5, 2001. Plaintiff speaks only Bosnian and does not speak English. Plaintiff worked for defendant-employer for fifteen months as a machine press helper before May 1, 2003. Prior to May 1, 2003, plaintiff had never experienced back pain or been treated for back pain.
2. On May 1, 2003, plaintiff was performing his job duties lifting two doors to a table in order to sand them when he experienced a sharp pain in his low back.
3. Plaintiff felt this pain between 9:00 a.m. and 9:30 a.m. on May 1, 2003. Within minutes of the lifting incident, plaintiff's supervisor, Mr. Adem Podic, called him over to see whether plaintiff could help Mr. Podic lift another object. Plaintiff told Mr. Podic that he could not because he had hurt his back, and plaintiff asked a co-employee, Mujdin Begic, to help Mr. Podic instead. Another co-employee of plaintiff, Mr. Hazim Durakovic, saw plaintiff grimacing later that day, and plaintiff explained to Mr. Durakovic that he had hurt his back lifting doors.
4. Plaintiff worked on May 2, 2003, but did not work on May 3 or 4, 2003. On May 5, 2003, plaintiff went to the doctor, where saw a physician's assistant. The initial medical record from the physician's assistant noted that plaintiff did not have a specific injury but that "[h]e does do a lot of heavy lifting." Plaintiff was removed from work for one week and an MRI was ordered to rule out a herniated disk in plaintiff's lower back. Plaintiff's wife brought the work release form to plaintiff's supervisor.
5. On May 7, 2003, plaintiff underwent a lumbar MRI, which revealed a herniated disk at L2-3, stenosis at L4-5, and degenerative disk disease at L5-S1. Based on these findings, plaintiff was referred to Dr. Scott Ellison, an orthopedic surgeon in Mooresville on May 9, 2003.
6. There is some dispute as to whether on May 1, 2003, plaintiff advised his supervisor, Mr. Podic, that he injured himself in a work-related incident, or whether he advised Mr. Podic simply that his back was hurting. Nevertheless, the greater weight of the evidence demonstrates that plaintiff first advised defendant-employer that he had back pain on May 1, 2003, and that he at least advised defendant-employer that his back pain resulted from a work-related incident lifting doors no later than May 12, 2003. This actual notice is well within thirty days of the injury's occurrence.
7. On May 12, 2003, Dr. Ellison first treated plaintiff for his back condition. Dr. Ellison's first medical record indicates that on May 2, 2003 plaintiff lifted something heavy at work and then experienced left low back pain.
8. There was a language barrier between plaintiff and his medical providers, such that plaintiff's niece, Meliaha Begic, had to translate for him at his initial appointments with the physician's assistant. In fact, plaintiff required a translator at the hearing in this case. Plaintiff's sister, Ismeta Begic, also accompanied plaintiff to his initial medical appointments. Although Ismeta Begic does not speak English, she confirmed that based upon what she heard in Bosnian plaintiff advised both the physician's assistant and Dr. Ellison of the incident lifting doors on May 1, 2003, through Meliaha Begic. To the extent that the medical records are inconsistent with plaintiff's contention that he was injured lifting doors on May 1, 2003 and attempted to inform his medical providers accurately, they are not given controlling weight. Furthermore, despite the translators who were present, there was more than likely some residual language barrier between the medical providers and plaintiff, which may have affected some of the documented details of plaintiff's reporting.
9. Dr. Ellison diagnosed plaintiff with (1) left low back pain, (2) a left L2-3 far lateral disk herniation, (3) degenerative disk disease at L5-S1, and stenosis at L4-5 with a high intensity zone, or annular tear, at L5-S1 as well. Of these diagnoses, the degenerative disk disease and annular tear at L5-S1 and the stenosis are idiopathic and asymptomatic, and plaintiff's incident on May 1, 2003, did not aggravate them. However, plaintiff's incident on May 1, 2003, did cause or aggravate the disk herniation at L2-3 and plaintiff's left low back pain.
10. Based on his findings upon physical and neurological examination, as well as the MRI study, Dr. Ellison restricted plaintiff to lifting no more than five pounds as of May 12, 2003. Dr. Ellison further advised that plaintiff should be allowed to sit or stand as needed and that he must also change positions as needed.
11. After plaintiff's appointment with Dr. Ellison on May 12, 2003, plaintiff immediately went to defendant-employer and met with Nord Wilson, who is defendant-employer's owner and president, and Leon Mabe, the manager. Plaintiff had not been able to work from a medical standpoint from May 3, 2003, until that meeting. Because neither Mr. Wilson nor Mr. Mabe spoke Bosnian, a co-employee, Adem Begic, translated for plaintiff at a meeting between all four individuals. Plaintiff was advised that defendant-employer could not accommodate the restrictions given to plaintiff by Dr. Ellison.
12. Upon hearing of plaintiff's injury, Mr. Wilson referred plaintiff out to a personal friend of Mr. Wilson, Dr. Andrew Jeter, who is a chiropractor. Dr. Jeter's first medical record from May 21, 2003, indicates that plaintiff had low back pain since May 1, 2003, when he picked up two doors and felt his back pop. After treating with Dr. Jeter for less than two weeks, Dr. Jeter released plaintiff to return to work at full duty on June 2, 2003. Dr. Ellison continued to treat plaintiff throughout this time, and Dr. Ellison continued to impose restrictions of lifting no more than five pounds and the need to alternate sitting and standing during this time.
13. On June 2, 2003, plaintiff returned to work with defendant-employer, upon Dr. Jeter's advice. The next day, on June 3, 2003, Dr. Ellison revised plaintiff's work restrictions so that plaintiff could lift no more than 20 pounds and needed a sit/stand option so that he could change positions as needed. However, defendant-employer could not accommodate these restrictions in the job to which plaintiff had returned on June 2, 2003.
14. On June 5, 2003, defendant-employer terminated plaintiff's job, allegedly for non-injury-related reasons. Regardless of the reason for plaintiff's termination, the job provided to plaintiff by defendant-employer between June 2 and June 5, 2003, was consistent with only Dr. Jeter's restrictions and not with Dr. Ellison's restrictions, which persisted even after June 5, 2004. Dr. Ellison's restrictions are given more weight and plaintiff was unable to earn the same wages regardless of his termination or reasons therefore as he was restricted by Dr. Ellison.
15. Plaintiff has not worked since June 5, 2004 although he has looked for employment. Plaintiff's restrictions and physical condition have prevented him from finding a job. Plaintiff's inability to communicate in English also limits his employability. Although plaintiff applied for unemployment compensation after defendant-employer terminated him on June 5, 2003, the Employment Security Commission did not allow plaintiff to apply for unemployment because of his limitations.
16. On July 10, 2003, Dr. Ellison recommended that plaintiff undergo surgery. Dr. Ellison revised plaintiff's restrictions to lifting no more than five pounds, with the option to sit/stand. Plaintiff continued to treat with Dr. Ellison after this time. On September 9, 2003, Dr. Ellison again recommended surgery. However, plaintiff did not wish to undergo surgery at that time due to no insurance coverage and considering returning to Bosnia for treatment. Plaintiff asked Dr. Ellison if he could write him a note allowing him to work, but Dr. Ellison advised him that he would only write a note that said plaintiff could work to his tolerance level. Plaintiff could not afford to return to Dr. Ellison for some period of time after this date.
17. In February 2004, plaintiff became entitled to Medicaid benefits. He began to treat with Dr. Michael Binder, a chiropractor, who later affirmed the previous 20-pound lifting restriction that Dr. Ellison had imposed but later tightened to five pounds. Even though plaintiff has looked for jobs since then, no one has hired him with these restrictions.
18. On May 1, 2003, plaintiff sustained a specific traumatic incident to his back resulting in a L2-3 disc herniation and left low back pain occurring at a judicially cognizable time while lifting doors arising out of and in the course and scope of his employment with defendant-employer.
19. As a result of his injury and considering the greater weight of the medical evidence as well as his work experience, education and his inability to speak English, plaintiff has been unable to earn the same or greater wages in any employment since May 3, 2003 and continuing, with the exception of work performed on June 2, 2003.
20. Plaintiff's average weekly wage is $396.20 with a weekly compensation rate of $264.13.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On May 1, 2003, plaintiff sustained a compensable injury or specific traumatic incident that arose out of and in the course of his employment with defendant-employer and consisting of plaintiff's low back pain and a herniated disk at L2-3. N.C. Gen. Stat. § 97-2(6).
2. Defendants shall pay for all reasonably necessary medical compensation related to plaintiff's compensable back injury for as long as such treatment tends to effect a cure or provide relief. This includes, but is not limited to, the surgery recommended by Dr. Ellison. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
3. Plaintiff gave proper notice of his injury to defendant-employer within the time period prescribed by the Workers' Compensation Act. N.C. Gen. Stat. § 97-22.
4. Plaintiff was totally disabled and therefore entitled to weekly benefits at a rate of $264.13 from May 3, 2003 and continuing with the exception of June 2, 2003. N.C. Gen. Stat. §§ 97-2(9); 97-29. Russell v.Lowes Prod. Distr., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457
(1993).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorneys' fee set forth in paragraph 4, defendants shall pay total disability compensation at the weekly rate of $264.13 to plaintiff from May 3, 2003, to June 2, 2003 and from June 3, 2003 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. The amount of accrued compensation shall be paid in a lump sum.
2. Subject to statutory limitations defendants shall pay for all related reasonably necessary medical compensation recommended by plaintiff's treating physicians, including but not limited to Dr. Ellison for so long such treatment is reasonably necessary to effect a cure, provide relief or lessen the period of disability.
3. A reasonable attorneys' fee of 25% of plaintiff's indemnity compensation is hereby awarded from all indemnity compensation owed or payable to plaintiff under paragraphs 1 of this Opinion and Award. With respect to accrued amounts of compensation, the attorneys' fee from such compensation shall be paid in a lump sum. With respect to future compensation, the attorneys' fee shall be payable in the form of every fourth check.
4. Defendants shall pay the costs.
This the 24th day of February, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER